IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER GRAHAM, an individual on
behalf of himself and all others similarly
situated,

        Plaintiff,                                            Civ. No. 02-0369 MV/RLP

vs.

VENGROFF, WILLIAMS & ASSOCIATES,
Inc.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Attorney's Fees, filed April 5, 2004, **[Doc. No. 82]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that Plaintiff's motion is well-taken and will be **GRANTED.**

## BACKGROUND

On April 1, 2002, Plaintiff Christopher Graham filed a class action complaint alleging that Defendant Vengroff, Williams & Associates, Inc., violated the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and the New Mexico Unfair Practices Act, NMSA 1978 § 57-12-1 *et seq*. From the beginning, Defendant was less than diligent in defending this case. Defendant accepted service of the complaint and entered an appearance on April 11, 2002. When Defendant had not filed its answer by June 11, 2002, the end of the sixty-day period provided for the filing of an answer, Plaintiff began calling and faxing letters to Defendant's counsel requesting that Defendant file its answer. Defendant did not respond to any of Plaintiff's communications.

On June 21, 2002, Plaintiff filed a motion for entry of default judgment, which was entered by the Clerk of the Court on June 24, 2002.  Plaintiff subsequently agreed to set aside the default and the parties filed a stipulation with the Court to that effect.[1]

On September 16, 2002, Plaintiff served his initial discovery requests on Defendant. Defendant's responses were due on October 16, 2002, but, at Defendant's request, Plaintiff agreed to an extension until October 30, 2002.  When Defendant's responses were not received by that date, Plaintiff spoke to Defendant's counsel and was told he would receive the responses by the end of the week.  Later that week, Defendant informed Plaintiff that he would not be able to respond by the end of the week but promised to provide responses by November 11, 2002. When Defendant did not file its responses by November 11, 2002, Plaintiff filed a motion to compel responses and to deem admitted the requests for admission.  The Court entered an order compelling Defendant to respond to interrogatories and requests for production no later than December 20, 2002, and deeming the requests for admissions served on Defendant admitted.

When Defendant had not served a single response by January 8, 2003, Plaintiff filed a motion for sanctions.  Five days later, Defendant served partial responses.  The Court subsequently granted Plaintiff's motion for sanctions, imposing monetary sanctions on Defendant and ordering Defendant to provide complete responses to Plaintiff's discovery requests.

On January 27, 2003, Defendant filed a motion requesting that the Court withdraw and amend certain of the requests of admission that the Court had deemed admitted due to Defendant's complete failure to respond to Plaintiff's discovery requests.  Plaintiff filed a motion opposing this request.  The Court stated that it "was concerned about Defendant's discovery

---

[1] Defendant agreed to reimburse Plaintiff for the costs incurred in obtaining the default ($145.00) so these amounts are not at issue in this fee request.

2

abuse" but felt that not allowing Defendant to withdraw some of the admissions was "too drastic." The Court therefore permitted Defendant to withdraw the admissions conditioned on the payment of Plaintiff's reasonable discovery expenses necessitated by the reopening of discovery into the subject matter of the deemed admissions.

When Defendant subsequently failed to produce a Rule 30(b)(6) witness, Plaintiff filed a second motion for sanctions. The Court scheduled a status conference to hear this issue. On the day of the status conference, the parties reached a settlement.

On September 26, 2003, the Court granted preliminary approval of the class settlement. The Court certified a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and (3). The class was defined as: (i) all persons with addresses in the State of New Mexico (ii) to whom letters in the form of Exhibit A were sent (iii) by Defendant (iv) in an attempt to collect a debt incurred for personal, family or household purposes (v) which were not returned as undelivered by the Post Office (vi) from April 1, 2001 to June 10, 2003. *See* Preliminary Approval Order, filed September 26, 2003 [Doc. No. 61].

Under the terms of the settlement, Defendant agreed to pay $3,975 to be divided equally amongst the class members; $1,000 to Christopher Graham as statutory damages pursuant to the FDCPA; and $2,000 to Christopher Graham for his services as class representative. Defendant also agreed to an injunction preventing it from operating as an unlicensed debt collector in New Mexico. The parties agreed to submit costs and attorney's fees to the Court for resolution. Plaintiff subsequently filed the instant motion for attorney's fees.

**DISCUSSION**

3

The FDCPA requires the payment of costs and reasonable attorney fees to a successful consumer:

> any debt collector who fails to comply with any provision of this subchapter . . . is liable to such person in an amount equal to the sum of [actual damages plus statutory damages] and in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fees as determined by the court.

15 U.S.C. § 1692k(a)(3); *see also Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989) (the award of reasonable fees and costs for a successful action under the FDCPA is mandatory) (*citing Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989)). As the prevailing party in this case, Plaintiff is entitled to an award of costs and reasonable attorney's fees.

To make the initial determination of what amount is a reasonable fee, a court should take "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The product of this multiplication is called the lodestar. The lodestar provides an "objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* The fee applicant bears the burden of demonstrating that the number of hours and the hourly rate are reasonable. *Id*.

In this case, Defendant does not challenge any specific time entry. Instead, Defendant asserts that overall the "time and labor required for Mr. Graham's case, and the novelty and difficulty of his case, do not justify his attorney's fees claim of approximately $22,000." Specifically, Defendant asserts that Plaintiff should not recover attorney's fees incurred in seeking discovery sanctions and opposing the reversal of the discovery sanctions awarded; that Plaintiff should not be permitted to recover attorney's fees incurred pursuing a claim that was abandoned; that the services of one of Plaintiff's counsel--Mr. O. Randolph Bragg--were not justified under the circumstances of this case; and that the attorney's fee request is not proportional to the

4

recovery in this case.

      A      Discovery Sanctions

Defendant's argument that Plaintiff should not recover for fees incurred in seeking discovery sanctions "resulting from Defendant's employees' communication problems and the illness of a key employee contact" is particularly unpersuasive. Defendant had an obligation to meet discovery deadlines and comply with Court orders regardless of its internal communication problems or employee illnesses. If Defendant was having difficulty meeting its discovery obligations, it should have approached the Court, or opposing counsel, for relief prior to the passing of the discovery deadlines. Plaintiff was entirely justified in seeking discovery sanctions, which, in fact, were granted by the Court, and is entitled to recover his reasonable attorney's fees incurred in doing so. Similarly, Plaintiff was justified in opposing Defendant's efforts to have some of the sanctions imposed by the Court reversed, and is entitled to recover the attorney's fees incurred in doing so.

      B.      Abandoned Claim

Plaintiff's initial complaint alleged two factual bases for his FDCPA claim: (1) that Defendant failed to inform debtors of their right to dispute the debt; and (2) that Defendant was collecting debts in New Mexico without the required license. Plaintiff subsequently dropped the failure to inform claim. Defendant contends that it should not be required to pay attorney's fees for preparation and litigation of the failure to inform claim that Plaintiff ultimately abandoned.

"Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley*, 461 U.S. at 440. A lawsuit, however, that involves "a common core of facts or [is] based on related legal theories . . . cannot be viewed as a series of discrete claims." *Id*. at 435. Plaintiff's claim for attorney's fees, therefore, hinges on whether his

5

failure to inform claim was distinct in all respects from his license claim.

The basis of both of Plaintiff's FDCPA claims was a letter sent by Defendant attempting to collect a debt allegedly owed to the University of Phoenix. Thus the failure to inform claim arises out of a common core of facts with the unlicensed debt collector claim and these claims are not distinct in all respects. Furthermore, both claims required nearly identical discovery and pleadings to determine the class members who received letters identical to the letter received by Plaintiff. Consequently, Plaintiff's abandoned claim is not distinct in all respects from his successful claim and the hours spent on the unsuccessful claim will not be excluded in considering the amount of hours reasonably expended.

C.  Specialized Counsel

Defendant asserts that an attorney with Mr. Bragg's level of experience and specialization was not necessary to effectively litigate this relatively simple case. The issue in this case--whether Defendant was licensed as a debt collector--was not particularly complex. The Court cannot say, however, that it was unreasonable for Plaintiff's counsel, who had limited experience with FDCPA claims and with class actions, to partner with an experienced FDCPA class action attorney. From the fee records submitted, it is clear that Mr. Bragg's involvement was primarily limited to editing and commenting on filings and assisting in strategic decisions. This is an appropriate and efficient use of attorney resources that may have resulted in an overall savings in attorney's fees. As noted by another court considering Mr. Bragg's participation in an FDCPA case:

> In fact, when a more experienced and higher rate attorney combines with an attorney billing at a lower rate efficiency is generally increased by having some work performed by each. Had Bragg performed all the work on these tasks plaintiff would rightly object that some of it should have been delegated and billed at a lower rate. The fact that both attorneys billed time on a task is at least as likely to evidence efficiency as duplication.

6

*Haak v. Hults Ford-Mercury, Inc.*, 79 F.Supp.2d 1020, 1022 (W.D. Wis. 1999).

      D.      Proportionality

Defendant argues that the Court should deny Plaintiff's requested attorney's fees because the fees exceed the class pecuniary recovery. Fee awards, however, need not be proportional to pecuniary recovery in consumer protection fee-shifting cases. In the civil rights context, the Supreme Court has rejected the proposition that fee awards should be proportionate to the amount of damages a plaintiff actually recovers:

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988.

*City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986). This reasoning applies equally to the consumer rights litigation. Courts have regularly made fee awards that exceed pecuniary recovery in FDCPA cases. *See, e.g., Gradisher v. Check Enforcement Unit, Inc.*, No. 1:00-CV-401, 2003 WL 187416 (W.D. Mich. Jan. 22, 2003) (attorney fees of $69,872 awarded based on statutory damages of $1,000); *Armstrong v. Rose Law Firm, PA*, No. 00-2287, 2002 WL 31050583 (D. Minn. Sept. 5, 2002) (attorney fees of $43,180 awarded based on statutory damages of $1,000).

Plaintiff successfully obtained monetary statutory damages for the class, changed Defendant's practices and obtained an injunction requiring Defendant to comply with state law. Under these circumstances, a fee award in excess of class and individual pecuniary recover is expected and warranted.

      E.      Reasonable Hours Expended

Plaintiff was primarily represented by Rob Treinen, an associate at Feferman & Warren. Mr. Treinen expended a total of 89.3 hours in the representation of Plaintiff. Richard N. Feferman, senior partner at Feferman & Warren, expended 2.2 hours in the representation of

7

Plaintiff and Charlotte Chesak, Feferman & Warren's paralegal, billed 10 hours on this case. The Court has reviewed Feferman & Warren's time records and finds the hours expended to be reasonable.

Plaintiff was also represented by O. Randolph Bragg, an attorney located in Chicago, Illinois, who specializes in FDCPA class actions. Mr. Bragg expended 25 hours in the representation of Plaintiff and his law clerks, Selma Adad, Craig Shapiro, Mike Kim and James Custodio, expended a total of 9.7 hours. While the time records reveal that Mr. Bragg was efficiently utilized to review proposed filings and consult on strategic decisions, the amount of time billed by Mr. Bragg for certain of these tasks was excessive. For example, several times Mr. Bragg billed six minutes to review a two or three sentence minute order. In addition, Mr. Bragg occasionally billed for tasks that should have been performed by a paralegal. *See, e.g.*, 02/18/02 ("research the N.M. UPA and D.N.M. local rules). To adjust for these individually minor, but cumulatively significant, overbillings, the Court will reduce Mr. Bragg's total hours by 10%.

With these minor adjustments, the Court finds that the total amount of hours expended by Plaintiff's counsel (124.3) was reasonable for litigating an FDCPA class action case from complaint through nine months of discovery. In making this determination, the Court notes that the number of hours required to be expended by Plaintiff's counsel was increased substantially by Defendant's failure to comply with its discovery obligations.

F.   Reasonable Hourly Rate

The first step in setting a rate of compensation is to determine the prevailing market rate in the community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 & n. 11; *see also Beard v. Teska*, 31 F.3d 942, 956-97 (10th Cir. 1994). A court must not determine a "just" or "fair" price, but rather determine what

8

the attorney would receive if he were billing a paying client rather than being paid by court order.

Mr. Treinen, who has been practicing since 1999, requests that he be compensated at the rate of $135.00 per hour.  In support of this rate, Mr. Treinen submits a declaration stating that this is the fee he charges to clients on an hourly basis as well as contingency fee matters.  The Court finds that Mr. Treinen's requested rate of $135.00 per hour is consistent with the market rate for attorneys with his skill and experience.

Mr. Feferman, who has over thirty years of legal experience, requests that he be compensated at the rate of $225.00 per hour.  In support of this rate, Mr. Feferman submits a declaration detailing his extensive experience in consumer law matters, including numerous class action and FDCPA cases.  In his declaration, Mr. Feferman asserts that this is the rate he charges to clients on an hourly basis as well as on contingency fee matters.  The Court finds that Mr. Feferman's requested rate of $225.00 per hour is consistent with the local market rate for attorneys with his skill and experience.

Charlotte Chesak, Feferman & Warren's paralegal, requests that she be compensated at the rate of $35.00 per hour for her work on this matter.  The Court finds that Ms. Chesak's requested rate is consistent with the market rate for paralegal work in this area.

Mr. Bragg, who has over thirty years of legal experience, requests that he be compensated at the rate of $325.00 per hour.  In support of this rate, Mr. Bragg, submits a declaration detailing his extensive legal experience in the area of consumer rights litigation, including FDCPA class actions.  Specialized counsel from areas where the prevailing rates are higher can only be compensated at the higher rate if there is a lack of suitable, experienced local counsel.  Plaintiff has provided no evidence that there was a lack of suitable, experienced local counsel.  To the contrary, the declaration submitted by Mr. Feferman reveals that Mr. Feferman has approximately

30 years experience litigating consumer cases, including class action cases and cases under the FDCPA.  Based on his affidavit, Mr. Feferman appears to have "reasonably comparable skill, experience, and reputation" as Mr. Bragg.  *Blum*, 465 U.S. at 895 & n. 11 Mr. Feferman's regular hourly rate is $225--$100 less per hour than Mr. Bragg's requested rate.  Given that one of Plaintiff's local attorneys appears to have a "reasonably comparable" degree of experience and specialization, the Court will award Mr. Bragg's fees at the local market rate of $225.00 per hour plus a small premium for his specific experience litigating FDCPA class actions, for a total of $250.00 per hour.[2]

Mr. Bragg's law clerks request compensation at the rate of $90 per hour.  The Court has not been provided any information on the legal experience of the law clerks.  From the time records submitted, it appears that many of the functions performed by the law clerks were paralegal tasks.  *See, e.g.*, 2/18/02 entry from James Custodio ("Entered client information into lawbase"); 5/30/02 entry for Mike Kim ("Prepared motion pro hac vice.  called court clerk as to the prerequisites for electronic filing); 09/10/02 Craig Shapiro ("edited discovery").  One law clerk, Selma Adad, appears to have been performing work at a higher level.  *See, e.g.,* 12/16/02 ("Drafted motion in support of class certification"); 12/17/02 ("Drafted class memorandum, declaration of ORB and declaration of Graham").  Consequently, the Court will award fees for Selma Adad at $90 per hour and the remaining law clerks at $35 per hour.

    F.    Lodestar Calculation

---

[2] The fact that one of Mr. Bragg's previous FDCPA class action cases was against Defendant is of little weight in the Court's determination of whether available local counsel had a reasonably comparable level of skill, experience, and reputation.

| Name | Hours | Rate | Total |
|---|---|---|---|
| Rob Treinen | 89.8 | $135.00 | $12,123.00 |
| Richard N. Feferman | 2.2 | $225.00 | $495.00 |
| Charlotte Chesak | 10 | $35.00 | $350.00 |
| O. Randoph Braggs | 22.5 | $250.00 | $5,625.00 |
| Selma Adad | 5.8 | $90.00 | $522.00 |
| James Custodio | .6 | $35.00 | $21.00 |
| Craig Shapiro | 2.3 | $35.00 | $80.50 |
| Mike Kim | 1.0 | $35.00 | $35.00 |
| **TOTAL** | | | **$19,251.50** |

G.   Costs

Under the FDCPA, Plaintiff is also entitled to an award of reasonable costs.  15 U.S.C. § 1692k(a)(3).  Mr. Bragg reasonably expended $80.26 in costs and expenses and Feferman & Warren reasonable expended $190.08 in costs and expenses.  Feferman & Warren, however, has already recovered $150.00 of their costs and expenses.  Therefore, the total amount of costs and expenses awarded to Plaintiff is $120.34 ($80.26 + $190.08 - $150.00), which increases Plaintiff's total award to $19,371.84.

H.   Other Adjustments

The Court will exercise its discretion to award New Mexico gross receipts tax at a rate of 5.8125% on Feferman & Warren's reasonable attorney's fees and costs ($12,968.00 + $190.08 = $13,158.08), which increases the total award by $764.81.  *See* NMSA 1978 § 7-9-1; *Mares v. Credit Bureau of Raton*, 801 F.2d 1197 (10th Cir. 1986) (approving award of gross receipts tax).

Finally, Plaintiff's total award must be reduced by $795.49 to reflect the fees previously paid by Defendant to set aside the default judgment ($145.49) and as sanctions ($650.00).

11

Plaintiff, therefore, is entitled to an award of attorney's fees and costs in the amount of $19,341.16 ($19,371.84 + $764.81 - $795.49).

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Attorney's Fees, filed April 5, 2004, **[Doc. No. 82]** is hereby **GRANTED.** Plaintiff is hereby awarded attorney's fees and costs in the amount of $19,341.16.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Exhibit C to Plaintiff's Reply Brief in Support of Plaintiff's Motion for Attorney's Fees, filed May 18, 2004, **[Doc. No. 87],** is hereby **DENIED** as moot. The disputed exhibit was not considered by the Court when ruling on Plaintiff's Motion for Attorney's Fees.

Dated this 4th day of October, 2004.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:
  Richard N. Feferman, Esq.
  Rob Treinen, Esq.

Attorneys for Defendant:
  Martin E. Threet, Esq.
  Joey B. Wright, Esq.